On appellant - cross-respondent's petition for reconsideration filed October 8, reconsideration allowed; opinion (150 Or App 236, 945 P2d 640) adhered to November 26, 1997

James L. AKINS,
Trustee of the Akins Loving Trust DTD 2/3/93,
*Appellant - Cross-Respondent,*

*v.*

Lynda S. VERMAST,
*Defendant,*

*and*

Jack A. REYNOLDS
and Vivian Reynolds,
*Respondents - Cross-Appellants.*

(95 CV 0119; CA A94814)

950 P2d 907

Michael C. Wetzel and Fowler & McNair for petition.

Before Landau, Presiding Judge, and Leeson, Judge, and Richardson, Senior Judge.

LEESON, J.

**LEESON, J.**

Plaintiff petitions for reconsideration of our opinion, *Akins v. Vermast*, 150 Or App 236, 945 P2d 640 (1997), alleging factual errors that undermine our conclusion on the cross-appeal that plaintiff was on inquiry notice of Vermast's fraud. ORAP 6.25(1)(i). We allow reconsideration and adhere to our opinion.

Plaintiff contends that the following statements in our opinion are factually wrong: (1) "Plaintiff initialed a paragraph in the Individual Lender's Instructions executed five days before closing giving [Vermast] authority to retain cash at closing"; and (2) "Some time before closing, plaintiff and Vermast agreed that Vermast would not use all of the loan money borrowed from plaintiff to purchase the property from defendants." *Akins*, 150 Or App 239.

■　　Plaintiff does not dispute that he initialed the paragraph in the Individual Lender's Instructions. His contention is that those instructions "while containing a typed date of June 9, 1994, were actually signed by Plaintiff Akins on June 13, 1994." Even assuming that plaintiff is correct, that fact would not change our analysis, because the four-day difference does not affect the fact that plaintiff knew before closing that Vermast intended to retain cash at closing and that plaintiff *gave her the authority to do so*.

■　　Plaintiff also contends that he never discussed with Vermast the fact that she would be receiving cash back at closing. However, plaintiff's deposition reveals that he knew that Vermast would receive cash back. Plaintiff explained that Vermast was borrowing money from him "because she said she needed the money to pay for [the property]." At deposition, plaintiff explained the transaction as follows:

"Q　And, again, you understood that Vermast was going to be coming up with some additional funds to complete this purchase?

"A　My understanding was that she already had the additional funds, *but nobody told me*—I mean, the title company didn't say they had them; they just said they needed my money to finish the deal.

"Q How about Vermast, did she tell you that?

"A No, *she never told me that she had the money,* but she told me that they had already—well, the one they advertised in the paper they had already gotten rid of. That was the five and a half acres. It had already been taken.

"Q And you had some idea that might be where the money was coming from?

"A *That's what I assumed.*

"Q Did you have any idea that Vermast was not going to apply the entire $20,000 toward the purchase of the property?

"A Well, I knew that if she had the [$]25,000 and the [$]20,000, *she wouldn't need all of it, because I initialed on one of those deals that I knew she would be getting some money back.*"

(Emphasis supplied.) Subsequently, plaintiff repeated that "[Vermast] would be getting some money back. That was what I assumed." When asked why Vermast would be getting money back if she was using the loan from plaintiff and her own money to complete the purchase, plaintiff responded, "I don't know." Even if plaintiff is correct that there is no evidence in the record that a *discussion* occurred between plaintiff and Vermast, the record amply demonstrates that after Vermast asked plaintiff for *more* money to complete the purchase, plaintiff knew that Vermast intended to retain cash at closing. That evidence supports our statement that plaintiff and Vermast agreed that Vermast would not use all of the loan money that she borrowed from plaintiff to purchase the property from defendants.

Reconsideration allowed; opinion adhered to.